# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIVIDAD GUTIERREZ, | Case No. 1:14-cv-01027-WBS-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |
| v. | |
| AMY ENG LENG d/b/a CHRISTY'S DONUT, et al., | (Doc. No. 37) |
| Defendants. | **OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On February 27, 2015, Plaintiff Natividad Gutierrez ("Plaintiff") filed a motion for default judgment against Defendant Leslie A. Keeling ("Defendant Keeling"). No opposition to Plaintiff's motion was filed. The Court reviewed the motion and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Local Rule 230(g); as such, the hearing on the motion was vacated.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED in the amount of $5,835.75.

## II. FACTUAL BACKGROUND

On June 30, 2014, Plaintiff filed a complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the California Unruh Act, California Civil Code § 51 *et seq.*; and California Health & Safety Code §§ 19955, 19959. (Doc. 1.) The complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and declaratory and injunctive relief. (Doc. 1.) Plaintiff alleges that he requires the use of a wheelchair when traveling in public (Doc. 1, ¶ 8), and the property that is the subject of this suit, Christy's Donut (the "Property"), presents numerous architectural barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility (Doc. 1, ¶ 10).

Defendant Amy Eng Leng d/b/a Christy's Donut ("Ms. Leng") was served with the Complaint on July 27, 2014 (Doc. 5) and filed both her answer and a crossclaim against Defendant Leslie A. Keeling on August 18, 2014 (Docs. 10; 11). Ms. Leng was dismissed from the Complaint on December 5, 2014. (*See* Doc. 30).

Defendant Leslie A. Keeling ("Defendant Keeling") was served with the complaint on July 20, 2014, but did not file a responsive pleading. (Doc. 4.) Plaintiff requested the Clerk of Court to enter default against Defendant Keeling on August 29, 2014, and the Clerk issued a summons with answer to the Complaint due within 21 days. (Docs. 16; 18.) The Clerk of Court entered default against Defendant Keeling on September 5, 2014. (Doc. 20.)

Plaintiff filed his First Amended Complaint on November 19, 2014, and served Defendant Keeling with a copy on December 12, 2014. (Docs. 27; 31.) After Defendant Keeling failed to respond to the First Amended Complaint, Plaintiff requested the Clerk of Court to enter default against Defendant Keeling and the Clerk again entered Default against Defendant Keeling on January 5, 2015. (Docs. 32; 33.)

On February 27, 2015, Plaintiff filed a motion for default judgment against Defendant Keeling, which is currently pending before the Court. (Doc. 37.)

//

//

### III.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See id.*  Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See id.*

A plaintiff is required to prove all damages sought in the complaint.  *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992).  In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P. 54(c).  If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.   Analysis**

   **1.   The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

      **a.   Prejudice to Plaintiff if Default Judgment is Not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendant Keeling participates and makes an appearance in the litigation – which may never

3

occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

### b.  Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id*. at § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

//

1   According to the complaint, Plaintiff "requires the use of a wheelchair when traveling about in public," and he is thus "physically disabled" as defined by the applicable California and federal laws. (Doc. 1, ¶ 8.) As a restaurant, the Property is a facility of public accommodation, does not function as a residence, and its activity affects commerce. (Doc. 27, ¶ 9.) Plaintiff alleges that Defendant Keeling owns, operates, or leases the Property; thus, she is allegedly liable for the Property's compliance with the ADA. (Doc. 27, ¶ 7.)

Plaintiff visited the Property and alleges that Defendants failed to provide barrier-free access to the Property in the following ways: (1) the exterior accessible route exceeds the maximum allowable slope, in violation of 2010 ADA Standards for Buildings and Sites ("2010 Standards"), § 403.3; (2) proper directional signage is not provided along the exterior designated accessible route of travel, in violation of California Code of Regulations, Title 24, Part 2 (California Building Code ("CBC")), § 11B-216.6; (3) no properly configured and identified accessible parking stalls are provided, in violation of 2010 Standards, § 208.1; (4) proper tow-away signage is not provided, in violation of CBC, § 11B-502.8; (5) proper clear level landings are not provided at the building entrance doors, in violation of 2010 Standards, §§ 404.2.4, *et seq.*; (6) the doorway to the vestibule leading to the restroom is too narrow, in violation of 2010 Standards, §§ 404.1, *et seq.*; (7) proper maneuvering clearances are not provided at the doorway to the vestibule leading to the restroom, in violation of 2010 Standards, §§ 404.2.4, *et seq.*; (8) the hardware on the door to the vestibule leading to the restroom is improperly configured, in violation of 2010 Standards, § 404.2.7; (9) proper maneuvering clearances are not provided within the vestibule leading to the restroom, in violation of 2010 Standards, §§ 404.2.4, *et seq.*; (10) proper maneuvering clearances are not provided at the restroom door, in violation of 2010 Standards §§ 404.2.4, *et seq.*; (11) the restroom door hardware is improperly configured, in violation of 2010 Standards, § 404.2.7; (12) the restroom door requires excessive operating force, in violation of 2010 Standards, § 404.2.9; (13) proper maneuvering, transfer, and turning clearances are not provided within the restroom, in violation of 2010 Standards, § 603.2; 9; (14) the lavatory in the restroom does not provide proper knee and toe clearances, in violation of 2010 Standards, § 606.2; (15) proper clear floor space is not provided at the lavatory in the

restroom, in violation of 2010 Standards, § 606.2; (16) the lavatory in the restroom is positioned too close to the nearest sidewall, in violation of CBC, § 11B-606.6; (17) the faucet controls on the lavatory in the restroom are improperly configured, in violation of 2010 Standards, § 309.4; (18) the accessories in the restroom are improperly positioned and lack proper clear floor space, in violation of 2010 Standards, § 604.7; (19) the toilet in the restroom is improperly configured and positioned, in violation of 2010 Standards §§ 604, *et seq.*; (20) proper clear floor space is not provided at the toilet in the restroom, in violation of 2010 Standards, § 604.3; (21) the flush control is not located on the open side of the toilet in the restroom, in violation of 2010 Standards, § 604.6; and (22) no grab bars are provided at the toilet in the restroom, in violation of 2010 Standards §§ 604.5, *et seq*. (Doc. 27, ¶ 11 (Plaintiff's settlement with Ms. Leng included injunctive relief for the other claims alleged in the First Amended Complaint).)

Plaintiff alleges that the removal of these architectural barriers is readily achievable, or alternatively, the services could have been made available through alternative methods that were readily achievable. (Doc. 27, ¶¶ 19-21.) As these facts are taken as true regarding Defendant following its entry of default, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code, § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability. Cal. Civ. Code, § 51.5. The Unruh Act also incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f). Here, Plaintiff alleges that Defendant Keeling denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (Doc. 27, ¶¶ 33-40.) Further, because Plaintiff's complaint properly alleges a prima facie claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim.

//

California Health and Safety Code, § 19955, mandates that all public accommodations constructed in California comply with the requirements of California Government Code, § 4450. Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities." Cal. Gov. Code, § 4450(a). Additionally, non-exempt public accommodations constructed prior to July 1, 1970, and later altered or structurally repaired, are required to comply with the same requirements of the California Health and Safety Code. Cal. Health & Safety Code, § 19959.

For purposes of pleading his claim, Plaintiff incorporates his prior allegations regarding the barriers he encountered at the Property (Doc. 27, ¶ 41), and further alleges that the Property is a public accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the [Property] was not exempt under the Health and Safety Code § 19956" (Doc. 27, ¶ 44). Although largely boilerplate, this claim is sufficiently pled. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment).

While Plaintiff's allegations in his complaint are generic as to all defendants, and Defendant Keeling is the only defendant remaining, defendants are jointly and severally liable for ADA violations in any of these capacities. *See Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000). Accordingly, Defendant Keeling alone may be held liable for Plaintiff's counsel's time, costs, and statutory damages. The complaint sufficiently states Plaintiff's claim under Title III of the ADA, the Unruh Civil Rights Act, and California Health and Safety Code, § 19955, and there appears to be merit to the substantive allegations. As such, these *Eitel* factors weigh in favor of default judgment.

### c.   Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is

7

unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007).  Here, Plaintiff is seeking a default judgment in the amount of $8,556.50, which includes attorney's fees and costs. This is not a relatively large sum of money, nor does it appear unreasonable as set forth below.

### d. Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant Keeling has submitted nothing to contradict the well-pled allegations in the complaint. Accordingly, this factor favors entry of default judgment.

### e. Default due to Excusable Neglect

Defendant Keeling failed to file a responsive pleading or oppose Plaintiff's motion for default judgment.  The Court has no evidence before it establishing that Defendant Keeling's failure to participate in the litigation is due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment.

### f. Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case.  In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

## 2. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a. Declaratory Relief

Plaintiff's complaint and motion for default judgment seek declaratory relief so Plaintiff may seek damages under California law.  Plaintiff asserts that, by virtue of Defendant Keeling's default, the allegations of the complaint are deemed true and constitute a sufficient ground for the Court to find that Defendant Keeling has violated Title III of the ADA.  Based on the allegations in the complaint and Defendant Keeling's default, Plaintiff is entitled to a declaration that, as it pertains to the Property, Defendant Keeling is in violation of Title III of the ADA.

### b. Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). A violation of the ADA constitutes a violation of the Unruh Act. As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a). (Doc. 37-1, p. 12.)

Plaintiff has sufficiently alleged facts indicating that he visited the Property and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property. (Doc. 27, ¶¶ 10-11.) Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c. Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. California Civil Code, § 55, also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Ferland v. Conrad Credit Corp*, 244 F.3d 1145, 1146-48 (9th Cir. 2001). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co.*, *Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)]. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433.
>
> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise

unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $8,586.86 for total billable time spent on the case as well as $1,395 for costs and litigation expenses. (Doc. 37-1, 9-10.) Specifically, Plaintiff requests (1) $5,130.00 for 17.1 hours of work expended by Ms. Tanya Moore, Esq., at an hourly rate of $300; (2) $750.00 for 2.5 hours of work expended by Mr. K. Randolph Moore, Esq., at an hourly rate of $300; (3) $240.00 for 1.6 hours spent by paralegal Marejka Sacks at an hourly rate of $115; (4) $2,081.50 for 18.1 hours spent by paralegal Whitney Law at an hourly of $115; and (5) $266.00 for 2.8 hours spent by paralegal David Guthrie at an hourly rate of $95. (Doc. 37-1, p. 14.)

### (i) Ms. Moore's Time Expended and Hourly Rate

Regarding the number of hours expended by Ms. Moore, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced.

Numerous entries throughout the billing statement reflect time spent reviewing communications from the Court:

//
//
//
//

| Date | Activity | Time Spent |
|---|---|---|
| 07/06/2014 | Communication from court: Complaint Asserting Denial of Right Access Under Americans with Disabilities Act | 0.10 (6 minutes) |
| 07/06/2014 | Communication from court: Civil New Case Documents | 0.20 (12 minutes) |
| 07/06/2014 | Communication from court: Reviewed Magistrate Judge Sheila Oberto's General Order | 0.10 (6 minutes) |
| 07/06/2014 | Communication from court: Reviewed Trail Conduct and Courtroom Decorum issued by Mag. Judge Oberto | 0.10 (6 minutes) |
| 07/06/2014 | Communication from court: Reviewed Summons Issued | 0.10 (6 minutes) |
| 07/21/2014 | Reviewed Summons: Summons Returned Executed | 0.20 (12 minutes) |
| 07/28/2014 | Communication from court: Reviewed Summons Returned Executed | 0.20 (12 minutes) |
| 07/28/2014 | Communication from court: Reviewed Clerk's Notice re Summons Returned Executed | 0.10 (6 minutes) |
| 07/28/2014 | Communication from court: Reviewed Summons Returned Executed | 0.20 (12 minutes) |
| 07/29/2014 | Communication from court: Consent to Magistrate Judge jurisdiction | 0.10 (6 minutes) |
| 07/31/2014 | Communication from court: Reviewed Telephonic Case Management Conference set | 0.20 (12 minutes) |
| 08/19/2014 | Communication from court: Clerk's notice to opposing counsel | 0.10 (6 minutes) |
| 08/29/2014 | Communication from court: Request for Clerk to Enter Default Against Defendant Leslie A. Keeling | 0.10 (6 minutes) |
| 08/29/2014 | Communication from court: Minute Order: CMC vacated and rescheduled | 0.10 (6 minutes) |

|   |   |   |   |
|---|---|---|---|
| 09/05/2014 | Communication from court:<br>Notice of Docket Correction |  | 0.10  (6 minutes) |
| 09/12/2014 | Communication from court:<br>Clerk's Entry of Default as to Defendant<br>Leslie A. Keeling |  | 0.10  (6 minutes) |

(Doc. 37-3.)                                                             **Total:         2.1 hours (128 min)**

When considering the time entries in total, the amount of time spent essentially reviewing the docket is unreasonable, particularly given the substance of the communications and docket entries.

On July 1, 2014, the only documents issued by the court were the new case documents and summons. (Docs. 2, 3.) These documents are issued in all civil cases in this district and are very similar, even among different judges. Given the routine nature of these orders, counsel familiar with this district's new civil case documents, as counsel is here, would require only a minimal amount of time to review these documents. Ms. Moore, however, spent 0.6 hours (36 minutes) reviewing these documents on July 6, 2014. (Doc. 37-3, p. 12, 5.) Paralegal Mr. Guthrie also processed these documents for which he billed .60 hours (36 minutes). (Doc. 37-11, p. 2.) In light of the routine nature of the documents reviewed, Ms. Moore's time spent on July 6, 2014, is excessive and should not be awarded. *See Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary).

On July 21, 2014, Ms. Moore recorded 0.20 hours (12 minutes) reviewing the "Summons Returned Executed" for an unidentified party. (Doc. 37-3, p. 12.) On July 28, 2014, Ms. Moore recorded 0.5 hours (30 minutes) reviewing communications from the Court. (Doc. 37-3, pp. 12-13 (three separate time entries).) On that date, the Clerk of Court noted that Plaintiff filed an executed summons and then filed a corrected executed summons. (Docs. 4, 6, 7.) Ms. Moore's time of 30 minutes for review of a document her office prepared and filed, and for reviewing the resulting ECF notes of those transactions, is excessive.

On July 29, 2014, Ms. Moore spent 0.10 hours (6 minutes) reviewing a 2-line ECF note that Plaintiff had consented to Magistrate Judge jurisdiction, and on August 18, 2014, Ms. Moore

spent an additional 0.10 hours (6 minutes) reviewing/analyzing Ms. Leng's Notice of Consent to Magistrate Judge jurisdiction. (Doc. 37-3, p. 13; *see* Doc. 8.) On July 31, 2014, Ms. Moore also spent 0.20 hours (12 minutes) reviewing a 6-line minute order setting the time of the telephonic Case Management Conference. (Doc. 37-3, p. 13; *see* Doc. 9.) On August 19, 2014, Ms. Moore spent another .10 hours (6 minutes) reviewing the Clerk of Court's Notice to opposing counsel that opposing counsel had used the incorrect "event" title when submitting Ms. Leng's consent to Magistrate Judge jurisdiction. (Doc. 37-3, 12; *see* Doc. 13.)

On August 29, 2014, Ms. Moore spent 0.20 hours (12 minutes) reviewing entries on the ECF consisting of the Request for Clerk to Enter Default filed by her office and the resultant minute order vacating and rescheduling the Case Management Conference. (Doc. 37-3, p. 13; *see* Docs. 16; 17.) On September 5, 2014, Ms. Moore spent 0.10 (6 minutes) reviewing the Clerk of Court's notice that Plaintiff had used the incurred "event" title when submitting his Request for Clerk to Enter Default, and on September 12, 2014, Ms. Moore spent an additional 0.10 (6 minutes) reviewing the Clerk's Entry of Default. (Doc. 37-3, p. 13; *see* Docs. 19; 20.) Ms. Moore's time of 24 minutes for review of a document her office prepared and filed, and for reviewing the resulting ECF notes of those transactions, is excessive.

Reviewing the above-referenced documents should have taken only a few minutes, particularly considering Ms. Moore's office had already billed for preparing the documents; the subsequent billing to review the documents that had been filed and recording that time as "communication from the court" is excessive. While reviewing automatic emails showing the occurrence of docket activity and reviewing short Court orders does take time, billing judgment must be exercised in the accumulation of billing entries of this type. Based on the activities recorded in reviewing routine, simple documents, the Court finds that only 0.70 hours (42 minutes) of the time expended on these activities is reasonable; thus, a reduction of 1.4 hours is warranted.

Further, the Court finds that the number of hours Ms. Moore billed in this case is not reasonable given the nature of this case and Ms. Moore's experience in these types of actions. Ms. Moore states that between November 5 and 19, 2014, and she spent 2.9 hours (170 minutes)

1  preparing, reviewing, and revising the first amended complaint and stipulation. (Doc. 37-3, pp.
2  15-16.) Based upon the Court's familiarity with the actions filed by Ms. Moore's firm in this
3  court, the Court is aware that this is basically a form complaint. The complaint filed in this action
4  is nearly identical to complaints filed by Ms. Moore in dozens of other actions in this Court, with
5  only the names of the parties and the allegations in paragraph ten changed to reflect the facts
6  specific to this case. The only substantive changes in the amended complaint were the addition of
7  identified barriers to paragraph 11. (*Compare* Docs. 1 and 25-1.) Between October 27 and
8  November 17, 2014, paralegal Whitney Law also billed 1.9 hours drafting the first amended
9  complaint and stipulation. (Doc. 37-9.) The Court finds that .5 hours of both Ms. Moore's and
10 Ms. Law's time is sufficient to draft the first amended complaint and will therefore deduct 2.4
11 hours from Ms. Moore's time and 1.4 hours from Whitney Law's time.

12       On October 15 and 16, 2014, Ms. Moore spent 0.70 hours (42 minutes) preparing and
13 reviewing the parties' joint status report.[1] (Doc. 37-3, p. 14.) Notably, Ms. Law had spent 1.1
14 hours (70 minutes) drafting the joint status report and seeking instructions for filing it with the
15 Court. (Doc. 37-9, p. 2.) The joint status report filed in this case is nearly identical to other status
16 reports filed by Ms. Moore in other actions before this Court. Accordingly, the Court finds that
17 0.20 hours of Ms. Moore's time and 0.30 hours of Ms. Law's time were more than sufficient for
18 preparation and review of the joint status report, and will therefore deduct 0.50 hours from
19 Ms. Moore's time and 0.80 hours from Ms. Law's time.

20       Finally, on February 24, 2015, Ms. Moore spent 1.5 hours (90 minutes) drafting
21 "instructions to [Whitney Law] re preparation and drafting of Motion for Entry of Default
22 Judgment against Defendant Leslie Keeling." (Doc. 37-3, p. 16.) Ms. Law reported spending a
23 total of 8.1 hours (486 minutes) preparing the notice of motion and motion for entry of default
24 judgment between February 2 and 27, 2014. (Doc. 37-9, p. 4.) The motion for default judgment
25 filed in this case is nearly identical to motions for default judgment filed by Ms. Moore in other
26 actions before this Court. "Accordingly, the Court finds that one hour of Ms. Moore's time and
27
28 [1] This time does not include the .40 hours (24 minutes) Ms. Moore spent on September 19, 2014, meeting and conferring with Ms. Leng's counsel regarding Rule 26 disclosures and a discovery plan. (*See* Doc. 37-3, p. 14.)

one hour of Whitney Law's time is sufficient to prepare the motion." *Moore v. E-Z-N-Quick*, No. 1:13-cv-01522-LJO-SAB, 2014 WL 1665034 (E.D. Cal. Apr. 24, 2014). The Court will therefore deduct .5 hours from Ms. Moore's time and 7.1 hours from Ms. Law's time.

With regard to the hourly rate to be charged, courts generally calculate these rates according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895. In general, courts use the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

Plaintiff asserts that Ms. Moore specializes in representing plaintiffs in disability actions, and Ms. Moore's declaration states she has filed and successfully prosecuted over 500 civil rights actions, she has handled numerous litigation matters through trial, and has been practicing law for twelve years. (Doc. 37-2, ¶¶ 7-8.) She usually bills at $350 per hour, but has reduced her hourly rate in this case to $300. (Docs. 37-1, p. 14; 37-2, ¶ 8.) Ms. Moore asserts an hourly rate of $300 has been found reasonable for Ms. Moore's work in other ADA cases in the Fresno division of this District, and should be awarded here. (Doc. 37-1, p. 14.) The Court finds that $300 is a reasonable hourly rate for work performed by Ms. Moore. Accordingly, it is recommended that Plaintiff be awarded the sum of $3,690.00 for work performed by Ms. Moore.[2]

**(ii)** **Mr. Moore's Time Expended and Hourly Rate**

Regarding the number of hours expended by Mr. Moore, the Court finds that the amounts claimed by Plaintiff for travel time and site inspection are reasonable. Mr. Moore's declaration states that he specializes in representing plaintiffs in disability actions and that he has been practicing law for over thirty years. (Doc. 37-4, ¶¶ 1-2.) He usually bills at $685 per hour (Doc. 37-4, ¶ 3), but has reduced his hourly rate in this case to $300 (Doc. 37-1, p. 14). The Court finds

---

[2] This amount consists of the amount of time billed by Ms. Moore (17.1 hours) minus the court recommended reduction in time spent reviewing the docket (1.4 hours) and spent in excessive or duplicative tasks (3.4 hours), for an adjusted time of 12.3 hours multiplied by Ms. Moore's hourly rate of $300 per hour.

15

that $300 is a reasonable hourly rate for work performed by Mr. Moore. Accordingly, it is recommended that Plaintiff be awarded the sum of $750.00 for work performed by Mr. Moore.

### (iii)  Paralegal Rate and Time Expended

Plaintiff seeks compensation for 1.6 hours expended by paralegal Marejka Sacks at $115 per hour, 18.1 hours expended by paralegal Whitney Law at $115 per hour, and 2.8 hours expended by paralegal David Guthrie at $95 per hour. (S*ee* Docs. 37-1, p. 14; 37-6; 37-8; 37-12.) Plaintiff refers the Court to *Moore v. E-Z-N Quick*, 2014 WL 1665034 for the proposition that courts in this district have determined that $115 per hour to be a reasonable rate. This district has found reasonable $115 per hour for work performed by a paralegal in ADA cases. *See id; Moore v. Ruiz*, 1:11-cv-2159-LJO-GSA, 2012 WL 3778874, at *6 (E.D. Cal. Aug. 31, 2012).

Regarding the number of hours expended by Ms. Law, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is unreasonable, duplicative, or inadequately documented and should be reduced as discussed above. Ms. Law's total hours are therefore reduced by 9.3 hours, for a total of 8.8 hours. The Court finds the numbers of hours expended by Ms. Sacks and Mr. Guthrie are reasonable. Accordingly, the Court recommends Plaintiff be awarded 13.3 hours of paralegal time expended at an hourly rate of $115 (1.6 hours for Ms. Sacks, 8.8 hours for Ms. Law) and 2.8 hours of paralegal time expended at an hourly rate of $95 (2.8 hours for Mr. Guthrie), for a total of $1,462.00.

### (iv)  Litigation Expenses and Costs

Plaintiff seeks to recover costs in the amount of $2,645.00. (Doc. 37-1, p. 14.) In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205. The statutory provisions of the ADA provide direct authority for the award of expert witness fees as litigation expenses under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). The costs here include expenses for the court filing fee, costs of service, and a fee for a site inspection of the Property, which are compensable pursuant to 42 U.S.C. § 12205 and *Lovell*. 303 F.3d at 1058.

//

Plaintiff has presented an invoice for the Inspection/Report, including the photos and consultation, totaling $875.00. (Doc. 37-3, p. 24.) Plaintiff's expert identified a total of thirty-two (32) alleged barriers to Plaintiff's full and equal access at the Property, as set forth in his First Amended Complaint. (Doc. 37-3, pp. 9-10; *see* Doc. 27 at ¶¶ 10-11.) In Plaintiff's settlement with Ms. Leng, he obtained injunctive relief for the ten (10) of those claims alleged at ¶¶ 10(a)-(c), 11(e)-(g), and 11(i)-(l), and seeks injunctive relief against Defendant Keeling for the remaining twenty-two (22) claims. (Doc. 37-1, pp. 9-10.) Because the time spent inspecting and reporting on ten of the thirty-two alleged barriers did not contribute to Plaintiff's recovery from Defendant Keeling (*see* Doc. 37-1, pp. 9-10), the amount awarded for the site inspection and report will be reduced accordingly. *See Martinez v. Longs Drug Stores, Inc.*, No. CIVS031843-DFL-CMK, 2005 WL 3287233 at *6 (E.D. Cal. Nov. 28, 2005). The recovery for 22 out of 32 claims, or 69% of the total, yields an award of $603.75 for the site inspection and report.

Plaintiff's overall litigation expenses and costs are compensable and should be awarded, subject to a $271.25 reduction to reflect the adjusted cost of the site inspection and report. Accordingly, it is recommended that Plaintiff be awarded the sum of $2,373.75 for litigation expenses and costs.

### d. Joint and Several Liability

In general, under both federal and California state law, liability among defendants for a successful plaintiff's attorney's fees is generally joint and several. *Turner v. Dist. of Columbia Bd. of Elections & Ethics*, 354 F.3d 890 (D.C. Cir. 2004) (joint and several liability for attorney's fees awarded under 42 U.S.C. § 1988 for all non-fractionable claims against defendants); *Cal. Trout, Inc. v. Super. Ct.*, 218 Cal. App. 3d 187, 212 (1990) (awarding attorney's fees under Cal, Code of Civ. Proc., § 1021.5, noting that liability for the fees among defendants was joint and several); *Corder v. Gates*, 947 F.2d 374 (district court did not err in refusing to apportion attorney's fees among defendants in awarding fees under Section 1988).

Under the ADA, prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA hold a landlord and a tenant liable for noncompliance with the Act.

*Botosan*, 216 F.3d at 832. In *Botosan*, the appellate court noted that the legislative history of the ADA supports this construction of the statute:

> This [provision] makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public accommodation itself, has obligations under this Act. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations. It simply makes no practical sense to require the individual public accommodation, a doctor's office for example, to make readily achievable changes to the public accommodation without requiring the owner to make readily achievable changes to the primary entrance to the building.
>
> Similarly, a doorman or guard to an office building containing public accommodations would be required, if requested, to show a person who is blind to the elevator or to write a note to a person who is deaf regarding the floor number of a particular office.
>
> The amendment also clarifies that entities which lease public accommodations are covered by the requirements of this title.

*Botosan*, 216 F.3d at 832 (quoting H.R. Rep. No. 101-485(III), at 55-56 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 478-79).

Here, although the complaint does not specify whether Defendant Keeling and Ms. Leng, dba Christy's Donuts, were co-tenants, co-owners, or in a landlord-tenant relationship, in all of those cases, liability for failure to comply with the ADA is joint and several.[3] To the extent Defendants had an agreement to allocate responsibility for compliance with the lease – of which there is no evidence before the Court – each Defendant still remains responsible for ADA compliance. *Botosan*, 216 F.3d at 832-34. As Defendants are jointly and severally liable for damages and fees awarded under the ADA, it is appropriate to award damages and attorney's fees against Defendant Keeling despite that Ms. Leng has settled separately with Plaintiff. Furthermore, no apportionment of the attorney's fees has been sought as Defendant Keeling has defaulted and has failed to oppose Plaintiff's motion for default judgment.

Additionally, courts have awarded attorney's fees against one defendant for plaintiff's counsel's time spent litigating against another defendant. *See Blackwell v. Foley*, 724 F. Supp. 2d

---

[3] The complaint alleges that "Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation." (Doc. 27, ¶ 7.)

1068, 1075 (N.D. Cal. 2010) (citing *Californians for Responsible Toxic Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 979 (1989)).  Thus, in recommending an award of attorney's fees against Defendant Keeling, the Court finds no basis to apportion the fees for Plaintiff's counsel's work spent litigating against Defendant Keeling only.

Finally, Plaintiff has requested that the damages and fees against Defenant be offset by the $6,500.00 settlement amount paid by Ms. Leng.  (*See* Doc. 37-1, p. 15.)  Such an offset is appropriate where there is joint and several liability, and an offset of $6,500.00 is recommended. *See generally Velez v. Roche*, 335 F. Supp. 2d 1022, 1042-43 (N.D. Cal. 2004) (offset may be awarded where settlement and award against which offset is sought were (1) for the same injury and (2) the injury is indivisible such that there is joint and several liability among the settling and non-settling defendants) (citations omitted).

**e.     Conclusion**

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Ms. Tanya Moore | $ 300 | 12.3 | $ 3,690.00 |
| Mr. K. Randolph Moore | $ 300 | 2.5 | $ 750.00 |
| Ms. Marejka Sacks | $ 115 | 1.6 | $ 184.00 |
| Ms. Whitney Law | $ 115 | 8.8 | $ 1,012.00 |
| Mr. David Guthrie | $ 95 | 2.8 | $ 266.00 |
|  |  | **Total Fees** | $ 5,902.00 |

Additionally, Plaintiff should be awarded $2,373.75 for the costs of suit, and $4,000 in statutory damages.  Plaintiff also requests that Defendant Keeling be granted an offset in the amount of $6,500.  Thus, the total award of damages, fees, and costs (including the offset) recommended is $5,775.75.

//

//

//

19

## IV.    RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment should be GRANTED;
2. Judgment be entered in Plaintiff's favor and against Defendant Leslie A. Keeling;
3. Defendant Keeling be found and declared to be in violation of Title III of the Americans with Disabilities Act;
4. Plaintiff be awarded statutory damages in the amount of $4,000;
5. Plaintiff be awarded attorney's fees in the amount of $4,440 (14.8 hours x $300 per hour), paralegal fees in the amount of $1,462.00 (10.4 hours x $115 per hour and 2.8 hours at $95 per hour), and costs of suit in the amount of $2,373.75; and
6. Defendant Keeling be awarded a $6,500.00 offset for the settlement amount paid by Ms. Leng, for a net award of $5,775.75.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 31, 2015**                              /s/ Sheila K. Oberto
                                                                   UNITED STATES MAGISTRATE JUDGE